**SCHLOTTMAN et al. v. PRESSEY et al.**

Civ. No. 2671.

United States District Court
D. Colorado.

April 13, 1951.

Bangs & McCullen, Rapid City, S. D., and Wm. Rann Newcomb, Denver Colo., for plaintiff.

French L. Taylor, Denver, Colo., for defendant.

WALLACE, District Judge.

Findings of Fact

I.

The plaintiffs are residents of South Dakota. The defendants are residents of Colorado. The amount sued for is in excess of $3,000.00, exclusive of interest and costs.

II.

Buford O. Schlottman, M. E. Hafner, M. J. O'Brien and Jay Huisman, plaintiffs, formed a joint venture on April 27, 1948, for the purpose of developing certain leased property in South Dakota for oil and gas production. Each of the plaintiffs had the authority and did act as agent for the joint venture in the transactions which precipitated this action.

S. W. Pressey and S. W. Pressey, Jr., defendants, are partners doing business as S. W. Pressey and Son, and each had the capacity to act in behalf of the partnership in the transactions involved in this action.

III.

After certain preliminary negotiations the parties to this action entered into a contract for the sale of oil well casing. The defendants offered to sell (plaintiffs' Exhibit 5) and the plaintiffs agreed to buy (plaintiffs' Exhibit 4) 2000 feet of 6 5/8 inch, O. D., 17 pound, good used casing at $2.00 per foot, subject to the vendee's inspection at the time of delivery.

In a letter dated March 29, 1948 (plaintiffs' Exhibit 3), the defendants acknowledged a telegram sent by the plaintiffs and stated the availability and price of 6 5/8 inch O. D. 17 pound used casing. Included in the letter was an enclosure of the current listings of S. W. Pressey and Son (defendants' Exhibit "A"). The enclosure contained the words: "weights shown not guaranteed." This letter and the enclosed listings did not reach the plaintiffs until after they had accepted the defendants' offer to sell.

In compliance with the terms of this contract, defendants delivered and plaintiffs accepted 2040 feet of casing on April 23, 1948, at Pueblo, Colorado. Buford O. Schlottman, acting as agent for the plaintiffs, was given the right and did inspect the casing prior to delivery for excessively rusted or damaged casing but did not inspect the casing for weight.

IV.

At the time of the delivery of the casing, S. W. Pressey executed an invoice and receipt for the balance of the purchase price (plaintiffs' Exhibit 9). This instrument was made in favor of George Stapp rather than Buford O. Schlottman, the actual deliveree, in order to comply with highway trucking regulations, which fact was made known to S. W. Pressey at the time he executed the instrument.

## V.

The casing delivered to plaintiffs by defendants was not 17 pound casing, as provided for the terms of the contract, but was 13 pound casing. The plaintiffs did not know the casing was 13 pound casing at the time of delivery. The casing sold to plaintiffs was used by the plaintiffs in the drilling of an oil well, Tepee Buttes No. 1, near Newell, South Dakota. After this well was drilled to a depth of 1407 feet, trouble developed which, ultimately, resulted in an abandonment of the well.

## VI.

The direct and proximate cause of the abandonment of the well and the resulting loss was the collapse of the casing. The casing collapsed as a result of using 13 pound casing instead of a heavier weight casing at a depth of 1300 to 1400 feet and not because the casing was rusted or rotten and unfit for use in any depth well.

## VII.

There is no evidence that the plaintiffs apprised defendants of the contemplated depth of the well for which the casing was to be used. In fact, the evidence does not disclose that defendants were aware of the purpose plaintiffs had in purchasing the casing.

## VIII.

The plaintiffs received information the casing used in the well was 13 pound casing on July 15, 1948, by Archie Newland, an expert in oil well drilling operations. This was subsequent to the drilling of the well and was the first time the plaintiffs became aware of the actual weight of the casing.

## IX.

The plaintiffs notified the defendants by letter of the actual weight of the casing and the loss of the well on September 10, 1948. The letter was received by S. W. Pressey, Jr. on September 13, 1948.

## X.

The following enumerated sums are the direct and proximate result of the collapse and subsequent abandonment of the oil well, Tepee Buttes No. 1:

1. Cost of 1407 feet of casing at $2.00 per foot ............ $2,814.00
2. Cost of transporting casing from Pueblo, Colorado, to Newel, South Dakota..... $ 589.10
3. Cost of joints and shoes used with the casing in drilling operations ............... $ 355.85
4. Cost of drilling well and reasonable sums expended in attempts to pull casing..... $9,815.86

## XI.

The evidence does not warrant a finding that the following enumerated sums were the direct and proximate result of the collapse and subsequent abandonment of oil well, Tepee Buttes No. 1:

1. Cost of Abstract—$74.45 (plaintiffs' Exhibit 17).
2. Expenses of B. O. Schlottman—$144.19 (plaintiffs' Exhibit 18).
3. Expenses of B. O. Schlottman—$54.90 (plaintiffs' Exhibit 37).
4. Expenses of M. J. O'Brien—$80.91 (plaintiffs' Exhibit 39).
5. Cost of 635 feet of casing at $2.00 per foot—$1,270.00.

## XII.

There is no competent or material evidence as to the difference between the cost of 13 pound used casing and 17 pound used casing at the time of the delivery of the casing on April 23, 1948.

## XIII.

Seventeen pound casing and thirteen pound casing are classified by the oil industry as separate and distinct types of casing; however it is difficult to distinguish between the two types without using a measuring or weighing instrument, particularly if it is used casing.

## I.

### Conclusions of Law

■ The court has jurisdiction over the parties and subject matter of this action.

## II.

■ The contract of sale of used casing between the parties to this action (paragraph III, findings of fact) was a valid binding contract.

## III.

■ The contract provided the casing was subject to the vendee's selection and inspection at the time of delivery. By this provision it was the intention of the parties that the plaintiffs would make a reasonable inspection of the casing for patent defects before accepting delivery but they did not intend to negative all express or implied warranties, thereby, creating a *caveat emptor* sale of goods.

## IV.

The enclosure of current listings (defendants' Exhibit "A") contained in the letter sent by defendants on March 29, 1948, and received by plaintiffs on March 31, 1948, was not a part of the contract of sale.

## V.

■ The failure of defendants to deliver 17 pound casing was a breach of contract for which they are liable for the direct and proximate damages resulting therefrom.

## VI.

■■ The plaintiffs made a reasonable selection and inspection of the casing at the time of delivery and acceptance; therefore the failure of plaintiffs to ascertain the casing was 13 pound casing rather than 17 pound casing did not constitute a waiver of defendants' breach of contract. The letter dated September 10, 1948, from plaintiffs to defendants, when they were first notified of the breach of contract, was a reasonable time after the plaintiffs became aware of the breach of the contract by the defendants.

## VII.

■ Generally, the buyer's measure of damage for the seller's failure to deliver goods of the kind contracted for, in the absence of a tender of the goods back to the vendor, is the difference in market value between the goods delivered and the goods contracted for at the time of the breach of contract. Special damages can only be recovered if the parties by their acts have created express or implied warranties.

The Uniform Sales Act, as adopted by the Colorado Legislature in 1941, is determinate of the legal rights and duties of the parties. The pertinent provision of that act reads as follows:

"Section 15. Implied Warranties of Quality.—Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.

"(2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality.

\*    \*    \*    \*    \*    \*

"(5) An implied warranty or condition as to the quality or fitness for a particular purpose may be annexed by the usage of trade." [1]

## VIII.

■ Before applying the above stated law to this action, the plaintiffs' theory of the case should be restated. The plaintiffs predicated their right to recover damages resulting from the collapse of the well on the contention that 13 pound casing is not suited for use to depth below 1200 or 1300 feet. They did not contend nor

1. Session Laws of Colorado 1941, Chapter 228, p. 830, Section 15.

introduce evidence to show the casing was not of merchantable quality or unfit for use in oil well operation.

By the express language of the statute there is no implied warranty of fitness for any particular purpose unless the buyer expressly or by implication makes known to the seller the particular purpose for which the goods are required. Assume there was in the instant case an implied warranty of merchantable quality and by the usage of the trade an implied warranty the casing was fit to use in oil well operation. The plaintiffs' right to damages for the collapse of the well cannot be based on either of these warranties but must rest on an implied warranty the casing was fitted for use to depth below 1200 or 1300 feet. There is not a scintilla of evidence upon which to base such an implied warranty of quality. As a result the plaintiffs' right to special damages must be denied.

### IX.

Since the plaintiffs or defendants did not introduce competent evidence as to the difference between the market value of 17 pound and 13 pound casing at the time of delivery of the casing, the plaintiffs are relegated to nominal damages by defendants' breach of contract.

### X.

It is the judgment of the court the plaintiff is entitled to $1.00 nominal damages and costs of this action.